# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| SYNETHIA EFFINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:19-cv-00766-KOB |
| | ) | |
| BIRMINGHAM-JEFFERSON | ) | |
| COUNTY TRANSIT AUTHORTIY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter comes before the court on Defendant Birmingham-Jefferson County Transit Authority's "Motion for Judgment on the Pleadings," (doc. 17), and "Motion for Leave to Amend/File Third Party Complaint," (doc. 21). In its motion for judgment on the pleadings, the Transit Authority seeks dismissal of all of Plaintiff Synethia Effinger's claims. Alternatively, the Transit Authority seeks to file a third-party complaint against Amalgamated Transit Union Local Number 725, which is mentioned in Ms. Effinger's complaint. After reviewing the parties' submissions, the court finds that both motions should be DENIED.

**I.     Factual Background**

According to her complaint, Ms. Effinger was a bus driver for the Transit Authority for more than twenty years without any substantive performance problems. (Doc. 1 at 4). In 2018, Ms. Effinger went on vacation for a week. When she returned, she realized she had forgotten that she had a dental appointment. So, on May 21, 2018, she called in to work with two hours' notice to reschedule her driving shift.

After her dental appointment, Ms. Effinger went to the Transit Authority to see if they needed any help. When she learned that the Transit Authority did not need help, Ms. Effinger proceeded to run errands and attend an eye appointment. She returned to the Transit Authority after her eye appointment to turn in her dental excuse, although she was not scheduled to drive that evening.

On her way out of the Transit Authority, a supervisor summoned Ms. Effinger and told her that she had to take a drug test. A form that Ms. Effinger had to sign indicated that the drug test was a "Post Accident Drug Test," although her last accident had been in 2013. (Doc. 1 ¶ 9). Lydia Brunson performed a drug test on Ms. Effinger in the Transit Authority restroom, watching Ms. Effinger urinate into a cup. The Transit Authority did not allow Ms. Effinger to return to work until it received the results of her drug test.

Ms. Effinger returned to the Transit Authority on May 29, 2018, to discuss her drug test results with Ms. Dierdre Byrd, who worked in human resources. The Transit Authority had told Ms. Effinger to bring her prescriptions with her. Ms. Effinger brought empty containers for her birth control and "another medication prescribed to be taken 'as needed'" that she had been taking on days and nights that she did not drive since her bus accident in 2013. (Doc. 1 ¶ 12).

At the meeting, Ms. Byrd told Ms. Effinger that she had passed her drug test. However, Ms. Byrd told Ms. Effinger, on threat of termination, that she needed to bring her actual medication to the Transit Authority so that Ms. Byrd could count the medication. Ms. Effinger ultimately decided not to comply with the request because she did not want Ms. Byrd handling her medication, as she thought it would be unsanitary and unnecessary.

The Transit Authority then terminated Ms. Effinger. According to Ms. Effinger's complaint, she was terminated "based on the perception that she had an impairment that

substantially limited her ability to reason, think, talk and walk as well as do her job, and she posed a 'direct threat.'" (Doc. 1 ¶ 14). Ms. Effinger asserts that the Transit Authority coerced Ms. Effinger's coworkers into making false after-the-fact statements about her behavior.

After Ms. Effinger's termination, the Union pursued a grievance based on an improper drug test and improper termination, in accordance with the operative collective bargaining agreement. The Union and the Transit Authority scheduled a grievance hearing. However, before the hearing, the Transit Authority offered Ms. Effinger reinstatement with limited backpay, conditioned upon a requirement that she seek treatment for drug abuse. Ms. Effinger refused the offer. However, the Union cancelled the grievance hearing based on the assumption that Ms. Effinger would accept the offer of reinstatement. Ms. Effinger contends that the Union's actions breached the collective bargaining agreement. Further, she asserts that, because of the Union's actions, she was denied a hearing that would have resulted in full reinstatement and backpay.

Ms. Effinger raises multiple claims based on the events surrounding her termination. She alleges that the Transit Authority violated § 504 of the Rehabilitation Act of 1973 because she was terminated based on the belief that she had a disability. Ms. Effinger states that the Transit Authority improperly terminated her based on a belief that she was mentally ill or a direct threat. She asserts that she was not actually ill or a threat, as she passed all drug tests and only took her prescribed medication when she was not scheduled to drive.

Ms. Effinger also asserts a hybrid claim under § 301 of the Labor Management Relations Act on the basis that the Transit Authority breached the operative collective bargaining agreement and the Union breached its duty of representation. Specifically, Ms. Effinger alleges that the Transit Authority breached the collective bargaining agreement because her drug test

3

was not administered properly per the Transit Authority's policy, she did not violate any policies, her termination was without factual support or just cause, and the disciplinary action taken against her was too severe. She also argues that the Union breached its duty of fair representation by cancelling her grievance hearing.

Finally, Ms. Effinger raises an invasion of privacy claim under Alabama law. She asserts that the request to count her medication was intrusive, unsanitary, and an impermissible invasion of her privacy, especially because she had already passed her drug test.

Ms. Effinger argues that the Transit Authority's actions have damaged her in multiple ways. She seeks reinstatement, compensatory damages, attorneys' fees, costs, post-judgment interest, and any other available relief.

## II. Discussion

### A. Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. *See* Fed. R. Civ. P. 12(c). A judgment on the pleadings is appropriate "when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002). To determine whether the movant is entitled to a judgment on the pleadings, the court should "accept as true all material facts alleged in the *non-moving party's pleading*, and . . . view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (emphasis added).

The court analyzes a Rule 12(c) motion for judgment on the pleadings the same way as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

*See Dial v. City of Bessemer*, No. 2:14-cv-01297-RDP, 2016 WL 3054728, at *3 (N.D. Ala. May 31, 2016) ("A Rule 12(c) motion for judgment on the pleadings is analyzed the same as a Rule 12(b)(6) motion to dismiss."). So, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*.

The Transit Authority argues in its motion for judgment on the pleadings that Ms. Effinger has failed to state a claim for which relief can be granted. (Doc. 17). More specifically, the Transit Authority argues that the court should dismiss Ms. Effinger's Rehabilitation Act claim because she failed to identify a covered impairment that the Transit Authority perceived her as having. Further, the Transit Authority argues that Ms. Effinger failed to show that her termination was actually connected to a perceived disability. Rather, the Transit Authority asserts that Ms. Effinger was terminated for failing to participate in the investigation into her drug use.

The Transit Authority also argues that Ms. Effinger's LMRA claim is insufficient because she failed to directly specify the provisions of the collective bargaining agreement that the Transit Authority allegedly violated. Additionally, the Transit Authority argues that the court should dismiss Ms. Effinger's claim for invasion of privacy, as the request to handle her pills was not an "intrusion" as required to support liability under Alabama law.

In response, Ms. Effinger argues that her complaint exceeds the minimum pleading standard and raises multiple disputes of material fact. (Doc. 22). She asserts that she has alleged perception of a disability because the Transit Authority thought that she was limited in her ability

to think, talk, and walk as well as do her job. She argues that, therefore, the Transit Authority thought she was disabled because they thought that she was substantially limited in a major life activity. In support of her argument, Ms. Effinger cites multiple cases.

Ms. Effinger also argues that she has sufficiently pled her LMRA claim because she listed four specific ways that the Transit Authority breached the collective bargaining agreement: improperly administering her drug test, punishing her despite a lack of policy violation, terminating her without factual support or just cause, and taking disciplinary action against her that was too severe. Finally, Ms. Effinger asserts the adequacy of her invasion of privacy claim by arguing that the investigation into her medication was objectionable, improper, and unnecessary.

The Transit Authority filed a reply seeking to distinguish the cases Ms. Effinger cited. (Doc. 23). The Transit Authority also repeated its arguments that all of Ms. Effinger's claims lack sufficiently specific allegations.

"The Rehabilitation Act prohibits recipients of federal financial assistance from discriminating against individuals with disabilities." *Garrett v. Univ. of Ala. at Birmingham Bd of Trs.*, 507 F.3d 1306, 1310 (11th Cir. 2007). To state a claim of disability discrimination under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, a plaintiff must plead that "(1) the plaintiff is an individual with a disability under the Rehabilitation Act; (2) the plaintiff is otherwise qualified for participation in the program; (3) the plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his or her disability; and (4) the relevant program or activity is receiving federal financial assistance." *H. v. Montgomery County Bd. of Educ.*, 784 F. Supp. 2d

1247, 1261 (M.D. Ala. 2011) (citing *L.M.P. ex rel. E.P. v. Sch. Bd. of Broward Cnty.*, Fla., 516 F. Supp. 2d 1294, 1301 (S.D. Fla. 2007)).

The standard for determining liability under the Rehabilitation Act is the same as under the Americans with Disabilities Act, 42 U.S.C. § 12101, et. seq. ("ADA"); thus, cases involving the ADA are precedent for those involving the Rehabilitation Act. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000); *see also* 29 U.S.C. § 794(d). The question of whether someone is disabled under both the Rehabilitation Act and the ADA "turns on a determination of whether the individual has: a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or is regarded as having such an impairment." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (internal citations omitted). To be "regarded as disabled," a plaintiff must show that the perceived impairment involved a major life activity and that the perceived impairment would be substantially limiting and significant. *Sutton v. Lader*, 185 F.3d 1203, 1208 (11th Cir. 1999).

In this case, Ms. Effinger's Rehabilitation Act claim contains sufficient facts to survive the Transit Authority's motion for judgment on the pleadings. The Transit Authority argues that Ms. Effinger has failed to state how the Transit Authority perceived her to be disabled and failed to show that her termination was related to that disability. However, Ms. Effinger's complaint specifically alleges that "she was terminated […] based on the perception that she had an impairment that substantially limited her ability to reason, think, talk and walk as well as do her job, and she posed a 'direct threat.'" (Doc. 1 ¶ 14). Ms. Effinger also alleges that her termination statement described her as "mentally ill." (*Id.* ¶ 22).

Accepting all of Ms. Effinger's allegations as true and viewing the facts in the light most favorable to her, she has plausibly alleged that she was terminated because of a perceived disability. *See Perez*, 774 F.3d at 1335; *Iqbal*, 556 U.S. at 678. Reasoning, thinking, talking, and walking are all major life activities for which limited abilities would be significant and prevent a plaintiff from doing many jobs. *See Sutton*, 185 F.3d at 1208. Being regarded as having those problems, or having a mental illness resulting in those problems, therefore plausibly qualifies as a disability under the Rehabilitation Act. *See Stewart*, 117 F.3d at 1285. Further, Ms. Effinger specifically alleges that she was terminated because of the perceived impairments and temporally pairs occurrence of the Transit Authority's comments about her impairments with her termination. Accordingly, at the pleading stage, Ms. Effinger's claim under the Rehabilitation Act contains sufficient factual content to support an inference of liability and to survive judgment on the pleadings. *See Iqbal*, 556 U.S. at 678.

Ms. Effinger's LMRA claim is likewise sufficient to survive judgment on the pleadings. Section 301(a) of the LMRA allows for "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Ms. Effinger alleges a hybrid claim under § 301 of the LMRA, which requires a plaintiff to show *both* "that the employer has breached the collective bargaining agreement and that the union has breached its duty of fair representation in handling the ensuing grievance proceeding." *Samples v. Ryder Truck Lines, Inc.*, 755 F.2d 881, 886 (11th Cir. 1985).

The Transit Authority asserts that Ms. Effinger's LMRA claim should be dismissed because she failed to rely on the actual terms of the collective bargaining agreement. However, Ms. Effinger has alleged that the Transit Authority violated the collective bargaining agreement specifically by improperly administering a drug test, disciplining her without a violation of

policy, terminating her without support or cause, and disciplining her too severely. (Doc. 1 ¶ 28). While Ms. Effinger does not quote specific language from the collective bargaining agreement or attach the agreement, she does point to the particular alleged breaches of the agreement. Further, she alleges that the Union pursued grievances relating to the drug test and termination, which supports her assertion that the Transit Authority violated specific provisions of the collective bargaining agreement related to those actions. Accordingly, Ms. Effinger's allegations provide sufficient factual detail to go beyond mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, even without direct reference to the contract language, Ms. Effinger's LMRA claim suffices to proceed to discovery.

Finally, Ms. Effinger has adequately pled her invasion of privacy claim to survive a motion for judgment on the pleadings. The parties do not contest that Ms. Effinger's claim of invasion of privacy relies on a theory of intrusion. The Supreme Court of Alabama has defined the wrongful intrusion aspect of invasion of privacy by adopting the definition from the Restatement (Second) of Torts. *Phillips v. Smalley Maint. Serv., Inc.*, 435 So.2d 705, 708 (Ala. 1983). It states: "one who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or [her] private affairs or concerns, is subject to liability to the other for invasion of [her] privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts, § 652B (1977).

Alabama law further defines the tort of invasion of privacy as "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Austin v. Mac–Lean Fogg Co.*, 999 F. Supp. 2d 1254, 1263 (N. D. Ala. 2014) (quoting *McIsaac v. WZEW–FM Corp.*, 495 So.2d 649, 651

(Ala.1986)). In examining the issue of intrusion, the Alabama Supreme Court has stated that "[t]wo primary factors are considered in "determining whether or not an intrusion which effects access to private information is actionable. The first is the means used. The second is the defendant's purpose for obtaining the information." *Hogin v. Cottingham*, 533 So. 2d 525, 531 (Ala. 1988).

In her complaint, Ms. Effinger argues that the Transit Authority tried to manually go through her prescribed medication to count it, despite the fact that she had passed all drug tests ever given to her—including one on the day that she was allegedly acting like she could not function. Further, she asserts that the medication was prescribed to be taken "as needed" without a specific count or dosage. Those facts, as alleged by Ms. Effinger and viewed in the light most favorable to her, plausibly allege a claim for invasion of privacy. *See Perez*, 774 F.3d at 1335; *Iqbal*, 556 U.S. at 678.

A reasonable person could find that a coerced investigation into something as private as prescribed medication, especially a physical investigation of medication meant to be ingested, constitutes a highly offensive intrusion into personal affairs that would cause outrage or mental suffering. *See* Restatement (Second) of Torts, § 652B (1977); *Austin*, 999 F. Supp. 2d at 1263. Further, a reasonable person could find that the means of the attempted investigation—namely the proposal that a non-medical employee handle Ms. Effinger's medication—and the purpose of the investigation were both suspect given the fact that Ms. Effinger had already passed a drug test. *See Hogin*, 533 So. 2d at 531. Accordingly, the court finds that judgment on the pleadings would not be appropriate in this case.

*B. Motion for Leave to File Third-Party Complaint*

In addition to its motion for judgment on the pleadings, the Transit Authority also filed a motion for leave to file a third-party complaint pursuant to Fed. R. Civ. P. 14. (Doc. 21). The Transit Authority argues that it should be able to file a third-party complaint against the Union because the Union would have a duty to indemnify the Transit Authority in the event that the Transit Authority loses the case. Nowhere in the motion for leave to file a third-party complaint or in the attached third-party complaint itself does the Transit Authority supply a legal basis for the assertion that the Union has a duty to indemnify the Transit Authority. The Transit Authority asserts that it will be prejudiced if the Union is not brought into the suit, but no one will be prejudiced by the Union's presence as a defendant.

Ms. Effinger filed a response, arguing that the Transit Authority's motion should be denied because it has no right of indemnity or contribution in this case, the Transit Authority is not seeking to enforce the collective bargaining agreement, and, under the statute, Ms. Effinger is free to choose to sue only one of the wrongdoers in this case. (Doc. 25). Ms. Effinger argues that, therefore, under Rule 14, the Transit Authority cannot file a third-party complaint.

The court finds that the Transit Authority has not shown that a third-party complaint would be appropriate in this case. Under Rule 14, "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). Where the third-party complaint is filed more than 14 days after the service of an answer, the third-party plaintiff must obtain leave of the court. *Id.* "The acceptance of a late-filed third-party complaint is a question addressed to the sound discretion of the trial court." *Driver v. W.E. Pegues, Inc.*, No. 7:11-CV-1374-LSC, 2012 WL 13020156, at *2 (N.D. Ala. Jan. 19, 2012) (quotation omitted). "Rule 14(a) does not allow

the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim." *United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987).

In this case, the Transit Authority simply has not shown any basis for its assertion that the Union would share liability in this case. As an initial matter, under the LMRA "the employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983). Further, in LMRA cases, courts "apportion liability between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer." *Vaca v. Sipes*, 386 U.S. 171, 197–98 (1967). The Transit Authority, therefore, has not shown that damages would be levied against it based on actions by the Union. Against this background, the sparse and effectively unsupported argument made by the Transit Authority does not merit the discretionary grant of leave to file a third-party complaint. *See Driver*, No. 7:11-CV-1374-LSC, 2012 WL 13020156, at *2. Thus, the court DENIES the Transit Authority's motion for leave to file a third-party complaint.

### III. CONCLUSION

For the reasons stated above, the court finds that Ms. Effinger has sufficiently pled all of her claims to survive the Transit Authority's motion for judgment on the pleadings. Thus, the court DENIES the Transit Authority's motion for judgment on the pleadings. Further, the court DENIES the Transit Authority's motion for leave to file a third-party complaint because of the Transit Authority's failure to show entitlement to indemnity.

**DONE** and **ORDERED** this 23rd day of January, 2020.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE